## LOCOMOTIVE ENGINEERS ON SAME ROAD ARE FELLOW-SERVANTS.

Circuit Court of Lorain County.

THE LAKE SHORE & MICHIGAN SOUTHERN RAILWAY COMPANY v. RUDOLPH STARK, ADMINISTRATOR.*

Decided, April 29, 1908.

*Wrongful Death—Negligence of Fellow-Servant—Locomotive Engineers are Fellow-Servants.*

Two engineers, on different locomotives, are fellow-servants, and where one is killed solely on account of the negligence of the other, there can be no recovery against the railroad company.

HENRY, J.; WINCH, J., and MARVIN, J., concur.

The action below was for death by wrongful act. The defendant in error was plaintiff below. His intestate, Frank Stark, was an engineer in the employ of the plaintiff in error. On the day of the accident, he, with a fireman, had charge of engine No. 818, east bound, standing on a side-track at Graytown. Their train had been detained there for several hours. At the same time engineer Van Glahn, with a fireman, was in charge of engine 773, west bound, which with his train and crew had been detained on a side-track at Rocky Ridge for many hours.

About 5:45 o'clock A. M., the train despatcher on being advised that Van Glahn's engine was out of water, issued an order to the conductor and engineer of its train, as follows: "C. and E. Engine 773. Engine 773 will run extra Rocky Ridge to Port Clinton, protecting itself against all trains." Port Clinton was east of Rocky Ridge and Graytown west thereof. About the time the order above quoted was given, Stark, who was killed, started with his train from Graytown towards Rocky Ridge and Port Clinton. As he approached Rocky Ridge, Van Glahn, with the fireman and brakeman, was just starting to cross over

*Affirmed without opinion, *Stark, Admr.,* v. *L. S. & M. S. Railway Co.,* 81 Ohio State, 560.

from the west bound to the east bound track, en route to Port Clinton for water, in pursuance of said order. Before Van Glahn's engine had fully passed from the cross-over to the east-bound track, Stark's engine overtook it, and in the ensuing collision Stark was killed.

It is practically admitted that one cause of this collision was Van Glahn's failure to observe the company's rules, 99, 100 and 102, quoted on pages 22 and 23 of the bill, as follows:

"Rule 99. When a train is stopped by an accident or obstruction, the rear brakeman must immediately go back with danger signals to stop any train moving in the same direction. At a point ten telegraph poles, or 1,500 feet, from the rear of his train, he must place *one* torpedo on the rail; he must then continue to go back at least twenty telegraph poles, or 3,000 feet, from the rear of his train, and place *two* torpedoes on the rail, ten yards apart (one rail length) when he may return to a point ten telegraph poles or 1,500 feet, from the rear of his train, and he must remain there until recalled by the whistle of his engine; but if a passenger train is due within *ten minutes*, he must remain until it arrives. When he comes in, he will remove the torpedo nearest to the train, but the two torpedoes must be left on the rail as a caution signal to any following train.

"Should the flagman be recalled before reaching the required distance, he will place two torpedoes on the rail, on the engineman's side, ten yards apart (one rail length) and immediately return to his train, unless an approaching train is within sight or hearing.

"If from any cause the speed of the train is reduced, the conductor will be held responsible for fully protecting the rear of the train by use of proper signals.

"If the accident or obstruction occurs upon single track, and it becomes necessary to protect the front of the train, or if any other track is obstructed, the front brakeman must go forward and use the same precaution. If the front brakeman is unable to go, the fireman must be sent in his place.

"Rule 100. Freight trains having work to do on any other track may cross over if no passenger train is due, provided no approaching freight train is in sight; and also provided that the flagman has been sent out in both directions with danger signals, as provided in rule 99.

"Rule 102. When it is necessary for a train on double track to cross over to the opposite track, a flagman must be sent out in both directions with danger signals, as provided in rule 99."

Van Glahn failed to take the precautions required of him under the circumstances, by these rules. It is suggested that inasmuch as these rules had been disregarded on some occasions to the knowledge of persons having superintendence of the running of trains, they might be regarded as having been thus abrogated. But the second paragraph of the syllabus in the case of *The New York, Chicago & St. Louis Railroad Company* v. *Ropp,* 76 O. S., 449, shatters this contention. It reads:

"The failure to obey any such rule is not excused by the presence or consent of another servant of the master, who is superior to the servant who agreed to obey such rule, when the superior servant is not authorized to represent the master in the making or changing of rules or contracts; and failure to obey the rule under such circumstances is negligence *per se.*"

The claim of liability really relied on, however, is stated in defendant in error's brief as follows: "The negligence in this case was the despatching of Stark out of Graytown at 6:10 A. M. when he knew or ought to have known that Van Glahn had an order to come up on the east bound track, and in not notifying Stark, as he says he might have done, five minutes before the accident."

The case was in fact submitted to the jury and they found their verdict for the plaintiff below, upon the sole issue as to whether, under the circumstances of this case. the order, given by the despatcher to Van Glahn as above quoted, was reasonable or unreasonable. The jury found that it was unreasonable. It is in proof that the order was in the customary form. It expressly required Van Glahn to protect himself against all trains. The rules of the company binding upon all its employees specifically provided in what way such protection should have been insured by him. His failure to observe those rules was thus the sole cause of the accident, and inasmuch as Van Glahn and Stark were fellow-servants, no liability arises. The company did its part, when it provided, as it did, adequate rules and appropriate orders to meet such emergencies as arose when it became necessary for Van Glahn to detach his engine from the west bound train and proceed over an east bound track to a station

east of where his train was lying, in order to obtain water. Having done its full duty in the premises, the company is not liable to Stark's administrator, although it is conceded that Stark himself was wholly without fault.

For error in refusing to instruct the jury as requested by plaintiff in error and to direct a verdict for the defendant, the judgment of the court of common pleas is reversed, and because we see no possibility of a retrial of this case bringing out any facts which could vary this result, we proceed to render here the judgment which the court should have rendered in favor of the defendant below.